1
2
3
4
5
6
7
8
9

10    **UNITED STATES DISTRICT COURT**

11    **CENTRAL DISTRICT OF CALIFORNIA**

12

13    CLIFFORD CLEMENTS,                )       Case No. CV10-220-R (JEMx)

14    individually and d/b/a PLATINUM   )
      MEDIA GROUP,                      )       FINDINGS OF
15                                      )       UNCONTROVERTED FACTS AND
                                        )       CONCLUSIONS OF LAW RE
16              Plaintiff,              )       DEFENDANTS' MOTION FOR
                                        )       SUMMARY JUDGMENT
17              vs.                     )
                                        )
18                                      )
      SCREEN GEMS, INC.; SCREEN         )
19    GEMS DISTRIBUTION, INC;           )
      SCREEN GEMS PRODUCTIONS,          )
20    INC.; and CLINT CULPEPPER,        )
                                        )
21                                      )
22              Defendants.             )
      _____  )

23

24          Based upon the arguments and admissible evidence presented by the parties in

25    connection with the Motion filed by defendant SCREEN GEMS, INC.

26    ("Defendant") for Summary Judgment, the Court makes the following findings of

27    uncontroverted facts and conclusions of law:

28    / / / / /

**UNCONTROVERTED FACTS**

1.      Plaintiffs' Complaint alleges a single claim against Defendant for copyright infringement that rests on his contention that substantial protectible expression in the film STEPPIN was infringed by Defendant's film STOMP THE YARD ("YARD").  Complaint ¶¶ 1-31 and 37-41.  All other claims originally included in Plaintiff's Complaint were previously dismissed pursuant to the Court's Order dated April 28, 2010.

2.      A true and correct copy of the version of STEPPIN that Plaintiff alleges was infringed by Defendant's YARD was presented to and reviewed by the Court. Defendant's Statement of Uncontroverted Facts ("DUF") 18; Plaintiff's Genuine Issues in Opposition ("PGI") 18.

3.      A true and correct copy of YARD that Plaintiff alleges infringed STEPPIN was presented to and reviewed by the Court.  DUF 33; PGI 33.

4.      Principal photography for the version of the STEPPIN film that Plaintiff claims was infringed by Defendant's YARD was completed "late in the summer of 2005."  DUF 6; PGI 6.  Such version was shown, in part, to Defendant's President, Clint Culpepper ("Culpepper"), on September 8, 2005.  Complaint ¶ 16; DUF 17; PGI 17.  That viewing by Culpepper is Plaintiff's sole admissible evidence of access to STEPPIN by Defendant or any person involved in the creation and/or production of Defendant's film YARD.  Plaintiff was not present on this occasion. Exhibit A to (Second) Declaration of Edward A. Ruttenberg (attaching Plaintiff's Responses to Requests for Admission ["RFAs"] 39 and 40).  Plaintiff never had any personal communications or contact of any kind with Culpepper.  RFAs 41-47.

5.      At the September 8, 2005 meeting Culpepper was shown an hour or so of a DVD version of the 151-minute STEPPIN film.  Declaration of Culpepper ("Culpepper Decl."), filed September 17, 2010, at ¶ 11; Declaration of Stacy Leitner ("Leitner Decl."), filed October 11, 2010, at ¶ 6.  At the end of the meeting, the DVD was not left with Culpepper.  Culpepper Decl. at ¶¶ 13-14; Leitner Decl. at ¶

7.  [The Court cites only to admissible portions of submitted Declarations.]

6.       More than a year prior to Culpepper's viewing of a portion of STEPPIN on September 8, 2005, the creator of YARD – Rainforest Films, an Atlanta-based film production and distribution company, and its executive, Will Packer -- had:

a.       Purchased (in February 2004) the rights to a project entitled "Step Show" that had been presented to Rainforest by a Tallahassee, Florida minister, Reverend Robert Provitt, and involved "steppin" (DUF 20 and 21; PGI 20 and 21);

b.       Commenced conversations (in March 2004) about the "Step Show" project with Defendant's executive Benedict Carver (DUF 22; PGI 22);

c.       Approached (in April 2004) writer Gregory Anderson regarding Rainforest's hiring of Anderson to write a screenplay that focused on the world of fraternity "steppin" (DUF 23; PGI 23);

d.       Received from Anderson (in or about June 18, 2004) a version of a screenplay previously written by Anderson entitled "The Rush" (DUF 24; PGI 24);

e.       Authorized Anderson (a few weeks after June 18, 2004) to write a treatment for Rainforest's "Step Show" project that would also include elements from Anderson's "The Rush" screenplay (DUF 25; PGI 25);

f.       Received from Anderson (in July 2004) and sent on to Defendant, with some revisions, Anderson's Treatment for the "Step Show" project.  Such Treatment focused on a troubled youth from Los Angeles who moves to Atlanta to attend a black college and join a fraternity, falls for the daughter of the college's provost, a girl who is the girlfriend of a fraternity member, and, after winning over the girl, participates in a "steppin" competition for the National Step Championships.  All of these elements were maintained and appear in the final YARD film (DUF 26 and 27; PGI 26 and 27);

1         g.     Entered into an agreement with Anderson (in August 2004) to

2  write a screenplay and perform other writing services on the "Step Show" project

3  (DUF 28; PGI 28); and

4         h.     Submitted to Defendant (in September 2004) Anderson's "First

5  Draft" screenplay for the "Step Show" project (DUF 29; PGI 29).

6      7.     Also prior to Culpepper's viewing of a portion of STEPPIN, the

7  creators of YARD had:

8         a.     Prepared (between September and November 2004) further

9  drafts of the "Step Show" project, including a "Second Draft" screenplay and a

10  "polish" of the Second Draft screenplay (DUF 30; PGI 30); and

11         b.     Signed a contract with Defendant (on or about April 13, 2005)

12  that "green-lighted" the "Step Show" project for production.

13      8.     At no time were any of the persons involved in the creative process of

14  creating and developing YARD during the 19 month period from February 2004 and

15  August 2005 provided access of any kind to STEPPIN.  DUF 34; PGI 34; RFAs 31

16  through 36, inclusive.

17      9.     While the films STEPPIN and YARD bear some generic

18  "similarities"—for example, each takes place at a fictional historical black college,

19  involves a male lead character who joins a fraternity and is a talented dancer who

20  falls in love with a female character, and both movies culminate in a dance

21  competition where the underdog beats its rival, the defending champion—such

22  similarities  are not evidence of "copying" and fall far short of satisfying the

23  objective "substantial similarity of protectible expression" standard required under

24  application of the Ninth Circuit's extrinsic test, which analyzes each work's plot,

25  sequence of events, characters and character relationships, settings, themes, mood,

26  tone, pace and dialogue.

27  /////

28  /////

4

**CONCLUSIONS OF LAW**

1. In *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court held that Fed. R. Civ. P. 56 "mandates the entry of summary judgment . . . against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Where plaintiff has the burden of proof, defendant need only point out the relevant issue for which plaintiff has no substantive evidence and the burden shifts to the plaintiff to furnish substantive evidence sufficient to raise a triable issue of fact. *Id.*.

2. Summary judgment is often granted in copyright infringement actions when the plaintiff is unable to raise a genuine issue that the defendant's work "appropriated" plaintiff's copyright-protected expression, that is, that the works in question are "substantially similar in their protectible expression." *Benay v. Warner Bros. Entertainment, Inc.*, 607 F.3d 620, 624 (9th Cir. 2010); *Funky Films v. Time Warner Entertainment Co., L.P.*, 462 F.3d 1072, 1075 (9th Cir. 2006); *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994); *Cavalier v. Random House, Inc.*, 297 F.3d 815, 824 (9th Cir. 2002).

3. To establish a *prima facie* case of infringement, Plaintiff must prove, among other things, that he owns the copyright in the allegedly infringed work and that Defendant actually copied from it elements protected by that copyright. *Feist Pubs., Inc. v. Rural Tele. Serv. Co*., 499 U.S. 340, 361 (1991).

4. Plaintiff may establish copying by showing that:  (1) Defendant had access to the copyrighted work allegedly infringed prior to the creation of Defendant's work, and (2) the works in question are substantially similar in their protectible expression. *Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir. 1987).

5. The Court finds that because there is no substantial similarity between the allegedly infringed film STEPPIN and Defendant's film STOMP THE YARD, as a matter of law, summary judgment is proper.

6. Only the particular expression of an idea, and not the idea itself, is

copyrightable.  In the Ninth Circuit, the analysis of the issue of "substantial similarity" is governed by the "extrinsic test."  *Funky Films*, 462 F.2d at 1077.  The extrinsic test focuses on "articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in two works."  *Benay*, 607 F.3d at 624, quoting *Kouf*, 16 F.3d at 1045.  "[T]his question may often be decided as a matter of law."  *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1164 (9th Cir. 1977).

7.     Further, in applying the extrinsic test, the court must "take care to inquire only whether the *protectible* elements, *standing alone*, are substantially similar.  In so doing, we filter out and disregard non-protectible elements in making our substantial similarity determination."  *Funky Films*, *supra*, quoting *Cavalier*, *supra* (emphasis in original).

8.     Plaintiff juxtaposes a number of similarities between STEPPIN and STOMP THE YARD (*see* Uncontroverted Fact 9, *supra*).  However, while these similarities might at first appear substantial, a closer examination of the relevant factors from *Funky Films* demonstrates that there are many more differences than similarities, and that the similarities do not relate to protectible portions of the works and do not constitute "substantial protectible expression."  In fact, many of the claimed similarities involve unprotectible elements such as historical facts, familiar stock scenes, and scenes a faire, which are incidents that flow naturally from the basic plot premise.  Other claimed similarities are not similarities at all, but have been created by Plaintiff's misleading descriptions of the films' contents.  *See Benay*, *supra*, at 629.

9.     Filtering out these unprotected elements, the two films are not substantial similar in their protectible expression under the extrinsic test.  Further, "random similarities scattered throughout the works" will not defeat Defendant's summary judgment.  *Kouf*, 16 F.3d at 1045-46.

10.     Plaintiff's argument that under the "inverse ratio" rule, the degree of

1 "substantial similarity" that he must prove to survive a motion for summary

2 judgment is reduced, is unavailing.  Plaintiff has not demonstrated the high degree

3 of access necessary for invocation of the inverse ratio rule.  To the contrary,

4 Plaintiff's own Genuine Issues in Opposition to Defendant's Motion for Summary

5 Judgment fail to dispute that, between April 2004 and November 2004, well before

6 Defendant's access (by Clint Culpepper) in the summer of 2005 to a portion of

7 STEPPIN, the creators of Defendant's STOMP THE YARD had written multiple

8 drafts of the STOMP THE YARD screenplay containing the basic elements on

9 which Plaintiff rests his present action.  As such, substantial independent creation of

10 STOMP THE YARD commenced well prior to Defendant's alleged partial access to

11 STEPPIN.

12       11.    The Court does not reach or decide the question of whether Defendant

13 is entitled to summary judgment on the additional ground asserted in the Motion that

14 Plaintiff is not the owner of the copyright or any equitable interest therein sufficient

15 to sustain his claim for copyright infringement.

16       12.    Defendant's Motion for Summary Judgment is therefore granted.

17 Dated:  December 13, 2010.

18

19 _____

20            MANUEL L. REAL
           UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28